JAMES W. FARRELL, Respondent, *v.* FRANK C. ROSE et al., Copartners under the Firm Name of ROSE BROS., Appellants, Impleaded with Others.

(Submitted January 7, 1930; decided February 11, 1930.)

*Louis Susman* and *J. M. Cohen* for appellants. Plaintiff's judgment, predicated on undue delay, resulting in alleged impairment of his easement of access, is without support and should be reversed. (*Lefkovitz* v. *City of Chicago*, 238 Ill. 23; *Chicago Flour Co.* v. *Chicago*, 243 Ill. 268; *Ryan* v. *City of New York*, 159 App. Div. 105; *Anderson* v. *Meislahn*, 12 Daly, 149; *City of Denver* v. *Bayer*, 7 Col. 117; *Brewster* v. *Brewster*, 145 App. Div. 812; *Johnson Service Co.* v. *Hildebrand*, 149 App. Div. 680; *Whalen* v. *Stuart*, 194 N. Y. 495; *Bremer* v. *Manhattan R. R. Co.*, 191 N. Y. 333.)

*Bertram Boardman* for respondent. The appellants were bound to keep the abutting street free from obstructions and excavations so as not to destroy the plaintiff's right to the use of his premises. For their failure so to do they are liable to the plaintiff who suffered injuries thereby. The appellants are liable not only for the unnecessary obstruction of the street but also for the unreasonable length of time that they permitted the conditions complained of to exist without making the slightest effort to abate them. (*Bates* v. *Holbrook*, 67 App. Div. 25; 171 N. Y. 460; *Van Siclen* v. *City of New York*, 32 Misc. Rep. 403; 64 App. Div. 437; 172 N. Y. 504; *Kane* v. *N. Y. El. R. Co.*, 125 N. Y. 164; *Egener* v. *New York Central R. R. Co.*, 130 N. Y. 108; *Lahr* v. *Metropolitan El. R. Co.*, 104 N. Y. 268; *Galway* v. *Metropolitan El. R. Co.*, 128 N. Y. 132; *Vogel* v. *Mayor*, 92 N. Y. 10; *Cassel* v. *City of New York*, 167 App. Div. 831; *National Cash Register Co.* v. *Remington Arms Co.*, 242 N. Y. 99.)

CRANE, J. Harlem River terrace is a street in the city of New York, borough of The Bronx, running north and south, and to the east of the tracks of the New York

Central railroad. At this point the street is many feet above the tracks, and kept in place by a retaining wall. On the east side of Harlem River terrace, and near West Fordham road, is the property of the plaintiff, on which he has erected garages for the storage of automobiles. These buildings open out onto the highway. Opposite the plaintiff's garages, or the other side of Harlem River terrace, is the retaining wall, a sheer perpendicular drop on this side of the street to the tracks of the railroad. If it were not for the retaining wall, there would be no Harlem River terrace. It would fall in onto the tracks.

The city of New York built this retaining wall. On the 2d of November, 1925, it contracted with Rose Brothers for the construction of a stone retaining wall. This work naturally was for the protection and security of Harlem River terrace, for the proper maintenance of the highway, and served also as a protection to the railroad. Rose Brothers, the contractors, had to do their work in what was then Harlem River terrace, or roadway. Their derricks, materials and excavation had to be in the roadway, as work could not be done on the railroad tracks. All work and the storing of all materials had to be to the east of the tracks and the right-of-way of the railroad. Rose Brothers commenced work November 11, 1925, and completed their contract April 11, 1927, an excess of 147 days over the time in which they had agreed to complete the work. The delay was caused by storms, unavoidable temperature, a cave-in of the sewer, which had to be rebuilt, and landslides, causing additional excavation. The city authorities recognized the necessity for the delay, and allowed the contractor therefor, in accordance with the terms of his contract. The Assistant Engineer of the Highway Bureau testified that the work proceeded with diligence, and that in view of the cave-ins and the other obstacles to progress, he recommended to the Borough President that the time for this extra work be allowed to the contractor. This was done. No

penalties were exacted, and the city accepted the work as having been performed according to the contract and the terms thereof.

The trial court found as a fact that the time required for the extra work not contemplated on the contract amounted to 147 days. The Appellate Division embodied in its order a finding of fact, numbered " 7," in exactly the same words.

The plaintiff claims to have suffered damage by the action of the city and of the Rose Brothers in the use of Harlem River terrace and the delay in doing the work. As an adjoining property owner, the plaintiff had the right to use the street and highway in front of his premises, subject at all times to the reasonable control and regulation of the municipal authorities, and to work in the street necessary for its repair and maintenance, or for the construction of other public utilities. This is common knowledge to those of us who live in a metropolis like New York city. The highway is continually being dug up for subways, sewers, gas mains, repairs and the like. The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably. The obstruction of streets and highways or the work carried on in them of a public nature must be reasonable and necessary for the public improvement which is being made.

The plaintiff recognizes these homely principles of law, and claims in his action against the city and the contractor that an unreasonable use was made of Harlem River terrace, and that the work was unreasonably

delayed, whereby his garages were rendered useless, to his financial loss. Automobiles, he said, could not be taken in and out of the garages because of the obstructions in the street.

The trial judge found for the plaintiff that the work called for by the contract was unreasonably delayed for a period of 147 working days. The Appellate Division reversed the judgment entered upon this finding as against the city, but affirmed it as to the Rose Brothers. The judgment should have been reversed as to both defendants, as the plaintiff failed to prove his case. He failed to prove any delay that was not made necessary by the conditions.

The plaintiff has made the mistake of thinking that he is justified in relying upon the contract between the city and the contractor, and he reasons that if the terms of the contract as to overtime have been broken by the contractor, he can take advantage of them, even though the city may not. With this in mind, the plaintiff failed to introduce any evidence whatever that the work was unreasonably delayed, and rests his case, so far as the time element is considered, upon the fact that the work was not completed until 147 days after the date for completion stated in the contract.

He has another claim regarding the use of the street, and it might be well to turn to the provision of the contract with reference to these matters. Section " L " thereof required the work to be entirely performed at the expiration of 125 consecutive working days, reckoned as follows:

" In the computation of the number of consecutive working days, the time during which the completion of the work has been delayed in consequence of the condition of the weather, or by any act or omission of the party of the first part or during such period as the work has been suspended by written order of the President (all of which will be determined by the President, who shall certify

to the same in writing, and whose determination and certificate thereof shall be binding and conclusive upon the Contractor), will be allowed to the Contractor and will be deducted in said computation. Sundays and also holidays, on which no work is done will also be deducted in said computation. If the completion of the work to be done under this contract shall require work or materials or both in greater amounts than those set forth in the Engineer's Estimate of Quantities, or if unforeseen obstacles are encountered in the prosecution of said work, then the time which the Contractor is delayed on account thereof will be determined and allowed by the President at the completion of the work, upon the receipt by him of a written application from the Contractor for such determination and allowance."

Section " (W) " of the contract reads as follows: " (W) The Contractor will observe the law and all ordinances of The City in relation to obstructing the streets, keeping open roadways and sidewalks, and providing passageways to property along the line of the work and protecting the same where they are exposed and would be dangerous to the public travel, and such sidewalks and passageways shall, as may be required, be planked or bridged by the Contractor, at his own expense."

We may dismiss the claim under " W " in a few words. For the reasons above stated, the work of building the retaining wall had to be done in the street, Harlem River terrace. The plaintiff offered no evidence that the use of the street by the contractor was unreasonable, or that in doing the work it was feasible to keep it boarded over for use of automobiles. Such construction would be no protection against cave-ins.

As to the time limit, as stated in paragraph " L," the findings show the delays were for storms, unfavorable temperature, excess excavation and unforeseen obstacles encountered in the prosecution of the work as testified to and certified by the city engineer. There is nothing else

in the case. The plaintiff offered no testimony to contradict these facts or to show that the work was unreasonably delayed. The time which the contractor was delayed on account of this extra work was allowed by the President at the completion of the work upon the receipt by him of the written application from the contractor for such determination and allowance. This avoided the penalty of twenty-five dollars a day as liquidated damages for every day of excess time over the 125 days agreed upon. This allowance by the Borough President was in accordance with the terms of the contract and the facts as they appear in this case.

If the extra work necessitating the delay of the 147 days had not been found and so conclusively proved, the plaintiff would still have had difficulty in sustaining his cause of action. The city might recover the penalties for 147 days' delay, or it might waive them. The plaintiff, however, had no rights under the contract entitling him to recover for a delay, or because the work was not finished within the contract time. The city had the option of making an allowance for delay, or it could enforce the penalty. The penalty was incurred when the work was not completed according to the contract, even though performance were impossible. The contractor having made the agreement, impossibility of performance would have been no excuse: the city could enforce the penalty, nevertheless. The Borough President was given power under the contract to show indulgence, but the contractor could not claim it as matter of right.

These rights and remedies, however, existed between the city and the contractor. The plaintiff could not recover on the contract, nor did he have any rights thereunder. The plaintiff's situation is similar to that of a stranger to the contract who has sought to recover on the bond furnished by a contractor to the city for the faithful performance of his work. (2 Dillon Mun. Corp. [5th ed.] § 830.)

The fact that there was a delay or an excess time of performance gave him no rights; the burden rested upon him to prove by the testimony of men familiar with this class of work and with the situation, that the delay was unreasonable and unnecessary. This is the basis of his action, not merely the fact of delay.

For the reasons here stated, the judgment of the Appellate Division and that of the Trial Term against the defendants Rose should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.