CITY OF REVERE *vs.* REVERE CONSTRUCTION COMPANY.

Suffolk.    January 10, 1933. — February 14, 1934.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Tax*, Abatement.  *Board of Tax Appeals.  Evidence*, Of value, Admitted without objection, Presumptions and burden of proof.

A city properly may prosecute an appeal from a decision of the Board of Tax Appeals granting an abatement of a local tax, although the petition to the board was commenced and prosecuted against the city's board of assessors and was so entitled in the board's records.

The Board of Tax Appeals tries an appeal from a refusal of assessors to abate a tax as a new case on all issues presented by the petition to the board and the answer thereto.

A statement in the record of an appeal to this court from a decision by the Board of Tax Appeals, that such portion of the evidence at the hearing was set forth in the record as might be necessary for the consideration of any question of law raised before the board, was held not to purport to be a report of all the material evidence.

Findings of fact by the Board of Tax Appeals are final where the evidence before the board is not reported.

It is the duty of the Board of Tax Appeals, hearing an appeal from a refusal of assessors to grant an abatement of a local tax, alleged to have been over-assessed, to ascertain the fair cash value of the estate of the taxpayer.

Such fair cash value of land and structures thereon depends in no small measure upon the nature and extent of valuable use which can be made of them under existing conditions.

No error was disclosed by the record upon an appeal by the city of Revere from a decision by the Board of Tax Appeals in part abating a local tax assessed upon a corporation operating under lease an amusement enterprise at Revere Beach reservation, in the admission of evidence that the property had been operated at loss for a period of five years: variation in profits of business of such a type conducted on land so situated properly might be thought to afford a reasonable measure of fluctuations in value.

It *was stated* that the above decision was not intended to relax the general rule that, upon trials to ascertain the fair market value of land taken by eminent domain, testimony as to profits derived from business conducted on the land in question is not admissible.

Upon the record of the appeal above described, it was *held*, that in the circumstances no substantial injustice was done and no reversible error was shown

(1) In permitting one of the appellant's assessors to be asked in cross-examination if, in making his valuation of structures on the land, he had in mind the expiration of the taxpayer's lease;

(2) In the admission of testimony of another assessor on cross-examination, that he thought that a prospective purchaser of such land would be interested in the ratio of rentals and taxes to the gross receipts from property of such nature;

(3) In permitting such assessor to be cross-examined as to his knowledge of a Federal regulation as affecting depreciation of amusement structures;

(4) In admitting testimony of an expert that land in another section of the Revere Beach boulevard was more valuable than that of the taxpayer, neither the value of such other land nor a statement of comparison appearing;

(5) In admitting in evidence testimony that some lease in the neighborhood had been surrendered;

(6) In admitting in evidence testimony as to the sale price of land a mile away from the locus;

(7) In the exclusion of testimony as to the purchase, by a lessee of some of the land in question, of residential property having a substantial value at a time when he was not paying rent and taxes, it not appearing whether the purchase was wholly on credit or what were the outside resources of the purchaser;

(8) In the admission of testimony of one of experience in such matters that a roller coaster of a type similar to one operated by the taxpayer as a part of its amusement enterprise probably would not be erected anew in the location in question.

APPEAL, filed in the Supreme Judicial Court for the county of Suffolk on October 27, 1932, by the city of Revere from a decision by the Board of Tax Appeals granting abatements of taxes to Revere Construction Company in the sum of $4,053.92.

Material facts shown by the record and assignments of error by the city are described in the opinion.

The case was submitted on briefs.

*W. P. Murray,* for the city.

*W. F. Porter & J. J. Butler,* for the taxpayer.

RUGG, C.J. This is an appeal by the city of Revere from a decision by the Board of Tax Appeals granting abatements to the petitioning taxpayer, a corporation organized as L. A. Thompson Scenic Railway Company of Massachusetts and since changed to its present name.

The proceeding was commenced by petition against the board of assessors of the city of Revere and was so entitled in the records of the Board of Tax Appeals, hereafter termed the board. The appeal to this court was taken in the name of the city of Revere. No question has been raised as to the propriety of this procedure. Commonly, none could rightly be raised. See *Bauer* v. *Mitchell,* 247 Mass. 522, 529. The city is ultimately responsible for the payment of any abatement which may be granted. It may properly prosecute an appeal from an adverse decision by the board. *West Boylston Manuf. Co.* v. *Board of Assessors of Easthampton,* 277 Mass. 180, 189–190.

The taxpayer on April 1, 1931, was the lessee and occupant of ten contiguous lots of land taxed in three parcels situated on the boulevard at the Revere Beach reservation. The taxpayer held the land under two leases, each for a

term of eleven years, expiring in October, 1930, with an option of renewal for a further term of five years, which had been exercised. Structures on the land consisted of a roller coaster called the "Cyclone Ride" and booths for amusement devices and other forms of entertainment. These were to remain the property of the lessee subject to removal within sixty days after the termination of the lease. The leases also provided for the payment of all taxes by the lessee. The board took a view of the premises. It gave an extended hearing from which it is apparent that the amusement business at Revere Beach is greatly affected by the weather, that the season for operation is between the middle of April and the middle of October, and that the great bulk of the business is done during the three summer months. The board received evidence as to conditions at Revere Beach, concerning altered methods of transportation from street railways and bus lines to automobiles, of congested traffic, inadequate parking facilities, of falling off in patronage, testified to by some witnesses and denied by others, of the taxpayer's figures of gross income and expenses showing losses in operation of the property over a period of five years preceding the assessments, and the return to the owners under the leases, of rental value and sales of comparable property, of opinions by experts, the owners and assessors as to the fair cash value of the property in question, of the original and replacement costs of the roller coaster and other structures, the necessity of extensive annual repairs, the rapidity of obsolescence of such structures and the fickleness of the public in patronizing only the latest designed roller coasters. The board found that the best and most profitable use of the property was its present use, that is, the occupancy of the lots as one parcel for the major attraction of a roller coaster supplemented by the booths for small amusement devices. Substantial abatements were granted.

No question was raised by the pleadings or contested at the trial except that of the fair cash value of the premises. The city in its claim of appeal assigned thirty-one errors of law alleged to have been committed with respect to the

admission or exclusion of evidence. The board tries an appeal of this nature as a new case on all issues presented by the petition and answer; a statement that such portion of the evidence is set forth in the record as may be necessary for the consideration of any question of law raised before the board does not purport to be a report of all the material evidence; and the findings of fact made by the board are final where the evidence is not reported. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273, 277. G. L. (Ter. Ed.) c. 58A, § 13.

It was the duty of the assessors to make a fair cash valuation of the estate of the taxpayer. G. L. (Ter. Ed.) c. 59, § 38. *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 205–208. The board was required to use the same standard of valuation in order to determine whether to grant an abatement. Fair cash value of land and structures thereon depends in no small measure upon the nature and extent of valuable use which can be made of them under existing conditions.

At the argument in this court the city objected to consideration by the board of evidence tending to show that the property had been operated at a loss for a period of five years. The record of evidence does not show that objection was taken to the introduction of this evidence. Incompetent evidence admitted without objection is commonly entitled to its probative value. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. *Mahoney* v. *Harley Private Hospital, Inc.* 279 Mass. 96, 100. No emphasis is placed on this point, however, because it is plain that some evidence was received over the objection and exception of the city tending to show that the business on the land of the taxpayer was running at a loss and that weight was given to such evidence in the decision. Of this general nature was evidence to the effect that, as compared with former years, trolley car feeders to Revere Beach were fewer in number, that a less number of people was coming to the beach, that adjustments for lower rentals were made because the business could not bear the burden of those previously reserved, that the lessors advanced money to pay taxes which the

lessee was bound to pay under the leases, the implication being that the lessee could not pay the taxes because of poorer business. There was evidence also as to the cost of insurance. The general effect of this evidence was to indicate operating losses on the property in question. Allusion was made to some of these factors in the decision of the board. It is fairly inferable that the board considered evidence of failing prosperity of the business conducted on the land of the taxpayer as bearing upon its valuation for taxation.

It is the general rule that upon trials to ascertain the fair market value of land taken under eminent domain testimony as to profits derived from business conducted on the land in question is not admissible. The reason is that injury to business in the absence of special statute is not recoverable as damages, and "Loss to business as business is too remote and consequential a damage to be allowed in estimating damage to the real estate on which it is conducted." *Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537, 539. *Whitman* v. *Boston & Maine Railroad*, 3 Allen, 133, 142. *Boston Belting Co.* v. *Boston*, 183 Mass. 254, 259. *Whiting* v. *Commonwealth*, 196 Mass. 468, 470. *Brackett* v. *Commonwealth*, 223 Mass. 119, 126. *Powers* v. *Rittenberg*, 270 Mass. 221, 224. See 7 Am. L. R. 163, for collection of cases in other jurisdictions. This general rule is not relaxed or impinged by anything here decided or in the cases about to be reviewed.

On the other hand, it not infrequently happens that the particular and special location of land is an appreciable, if not the chief or exclusive, factor in its value. Location may in truth make whatever profits are to be derived from the land. Profits from a business may be highly important in determining the value of a toll bridge. *State* v. *Suffield & Thompsonville Bridge Co.* 82 Conn. 460. *Montgomery County* v. *Schuylkill Bridge Co.* 110 Penn. St. 54. The same may be true' of places of scenic beauty to which admission is charged. The location rather than the business skill of the manager is the main element in profits where nature points out the location. The stable factor in such business

may well be the location and not the management. Resorts such as Revere Beach afford inexpensive and highly attractive facilities for healthful and happy recreation. They attract throngs for that reason. Amusement enterprises at such places obtain patronage as a result of their location at a point where many people come. The volume of profits of a business is dependent upon the size of the crowds of people gathering there. Variations in profits of the business conducted on land so situated may be thought to afford a reasonable measure of fluctuations in value. If net income received from such a business on land so located increases, the fair cash value of the land may also increase. If the profits are found to be due, not chiefly to skilful management which could obtain rewards in a different location, but to the location itself, a stable and unvarying factor not dependent upon the differing business ability of competent men, then profits may be some index of the value of the land.

The analogy of certain decisions supports the conclusion that no harmful error was committed in the admission of evidence in this respect by the board. While loss of business is not an element in the assessment of damages when land is taken by eminent domain, evidence as to the extent of the business conducted on the premises within reasonable limits has some probative force on the question of the capacity of the land for the uses to which it is adapted at the time. *Wellington* v. *Cambridge,* 220 Mass. 312, 318. In *Peabody* v. *Boston Elevated Railway,* 191 Mass. 513, the diminution in the value of hotel property caused by the erection of the elevated railway structure was in issue. Evidence that a smaller number of front rooms was taken by guests was held not inadmissible to show diminution in value of the property for the purpose to which it was devoted. It was decided in *Cotton* v. *Boston Elevated Railway,* 191 Mass. 103, that evidence of a change in the opportunities for doing business on a city street by reason of the maintenance and operation of the elevated railway structure was admissible. Decrease of business in conducting bathhouses at a shore resort was held to be admissible on a

petition for the assessment of damages under eminent domain in *Vineyard Grove Co.* v. *Oak Bluffs*, 265 Mass. 270, 279. The amount of business done on real property is admissible as bearing on its capacity for valuable use. *Pegler* v. *Hyde Park*, 176 Mass. 101, 102.

The admission or exclusion of evidence of this character has been held to rest in considerable degree upon the exercise of sound judicial discretion. *Maynard* v. *Northampton*, 157 Mass. 218. The qualifications of witnesses as experts were for the determination of the board.

Upon survey of the whole case we are of opinion that the admission of this evidence, while some of it was close to the line, does not warrant a setting aside of the decision of the board. *Lowell* v. *County Commissioners*, 152 Mass. 372, 376. *Pigeon's Case*, 216 Mass. 51, 55. *Springfield Young Men's Christian Association* v. *Board of Assessors of Springfield*, 284 Mass. 1, 9. Compare *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420, 442; *Local Government Board* v. *Arlidge*, [1915] A. C. 120; *Fandel* v. *Board of Zoning Adjustment of Boston*, 280 Mass. 195.

Numerous objections were made to evidence not falling precisely within the general principles already stated. One of the assessors was asked in cross-examination if he had in mind in making his valuation of the structures the expiration of the lease. Considerable latitude in cross-examination is permissible. The reported evidence on this point is fragmentary. There is nothing in the record to show error. *Donovan* v. *Haverhill*, 247 Mass. 69. Admission of testimony of another assessor on cross-examination, that he thought a prospective purchaser of such land would be interested in the ratio of rentals and taxes to the gross receipts from property of this nature, can hardly rise to the dignity of reversible error in the circumstances disclosed. The same is true of cross-examination as to his knowledge of some Federal regulation as affecting depreciation of amusement structures. Testimony of an expert that land in another section of the Revere Beach boulevard was more valuable than that of the taxpayer discloses no harm-

ful error.  Opinion evidence as to the value of other land than that under direct inquiry commonly is not admissible. *McCabe* v. *Chelsea*, 265 Mass. 494, 495, and cases cited. The value of the land in that other section was not shown and no standard of comparison appears.  The testimony that some lease in the neighborhood had been surrendered does not appear to have been prejudicial error.  Testimony as to the sale price of land a mile away from the locus seems to have been remote from the issue, but we do not think that there was substantial injustice in this regard.  Exclusion of testimony as to the purchase by a lessee of some of the land in question of residential property of a substantial value at a time when he was not paying rent and taxes was not erroneous.  It does not appear whether the purchase was wholly on credit or what were the outside resources of the purchaser.  Testimony by one of experience in such matters that a roller coaster of a similar type probably would not be erected anew in this location cannot be said to have been without weight in determining the value of the existing structure.

It would serve no useful purpose to examine or to discuss at further length the questions of evidence argued.  No reversible error appears to have been committed, because the rulings were not erroneous, or were discretionary, or related to inconsequential matters, or did not affect adversely the substantial rights of the parties.  *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 386.

It follows that abatements are granted in the sums found by the board and that the taxpayer is to recover its costs before the board and the costs of this appeal.

*So ordered.*